Thank you. May it please the court, Laura Gracer for Mr. Johnson. I'd like to start with count 8, which is the jury instruction for the crime that's called aggravated sex abuse. But the court affirmatively, at the government's request, and the court affirmatively instructed the jury that they did not have to prove that defendant actually engaged in any sex act at all with anybody. And he is serving a life sentence for what is essentially a thought crime. And that is not what the statute contemplates. And I submit that the plain language of the statute shows that. And this court's jury instruction that was taken from the statute shows that. The case that the court asked us to consider a couple of days ago in an order, Luca Xiao, also shows that. Ms. Potter has cited some cases from other circuits that read the statute in, frankly, I think, just a very strained and illogical way. The plain language of the statute is that you must prove there was a victim under 12. No, please go ahead, Judge Moore. It's just, since you mentioned the plain language of the statute, and I understand you have an argument based on Luca Xiao, but setting aside Luca Xiao for just a moment, if we were just looking at the statutory language, can you take me through how it supports your position? Because we have this first clause, whoever crosses a state line with intent to engage in a sexual act, the person who has entertained the age of 12 years. And it seems like you want there to be an and, and then goes on to engage in a sexual act. But there's a string of ors, but there isn't an and in there. So how do you get the actual commission of an act to be a required element of the statute under the text? Well, first of all, you have to look at the context of that statute itself. Section C. I just think the way that it is, the construction, the series of commas, it implies that those three things are introductory. Whoever is in prison, who crossed the state line, et cetera, et cetera. And then the verb knowingly engages in a sex act applies to the three, the clauses that come before the word knowing engages in a sex act. But I mean, there are verbs in those introductory clauses. And it's sort of, under your reading, they're kind of stuck together. It's whoever crosses a state line, some of the stuff, knowingly engages. There's a missing and, isn't there, if we read it your way? It's not a gracefully drafted statute. I think the end is, those three clauses are connected. You know, the Oxford comma, one clause, another clause, another clause, and then the verb. Council, didn't you also argue that the legislative history, the fact that the first phrase, dealing with crossing a state line, was dropped into an already existing statute, supports your construction that this was intended, like the other clauses, the special maritime and territorial jurisdiction and the prison clause, to also go with the requirement of an actual or attempted sex act? Yes, I did indeed make that argument and quoted some relatively conservative senators, all opining that this has to do with punishing people who have sex with a person under 12. And to the extent that the statute can be read two ways, I think classically we look at the legislative history and the history both of the statute itself and then the commentary by the various senators and representatives who passed it over the years. This is in response to various crimes being committed upon children under 12. Council, in its brief, the government alternatively argues that any error was harmless, and you address that at page 11 and 12 of the Gray Brief, and you say that the problem is that LS's specific age was not an issue given the instruction that the court had told the parties the court would give, and that you had no incentive to engage on this point given the court's instruction. Can you amplify that for me a little bit about why this error, in your view, isn't harmless if it is an error? Well, there was extensive testimony that didn't come up in my brief, but extensive testimony about how disorganized and corrupt Cambodia is, its history and the killing fields that occurred and wiped out an entire generation of professionals. So the structure of the government is fairly chaotic as a consequence, and it's a poor country. This is a poor young man, LS, in count three. We don't know. It's telling, I think, that when he was testifying, the first question that the U.S. attorney asked every single one of the alleged victims was, what's your date of birth? And LS stumbled. He got it wrong, and they had to be corrected by the U.S. attorney. Not the year, but the day. In Cambodia, your birth date is simply not a pivotal thing. I submit that they did not prove that. It's a fair inference he's under 18. Some of the photographs establish that some of these alleged victims were under 18, but there was no incentive, and I think you just can't infer from the record that he was under 12. And in any event, the court clearly instructed, as it had to, that each count needs to be considered separately, so you can't just lap over the proof in three, which didn't prove he was under 12. The jury wasn't asked. It was an issue for him. But he said that he confirmed the date of birth on his passport was June 2002, and he said that that was right. But he eventually said 2002, and he described the course of conduct beginning in 2009. So for there to be a reasonable doubt as to whether he was under 12, the jury would have to infer that he might have been off by more than five years as to what his true date of birth was. Is there anything that would have supported such an inference? They were affirmatively instructed. The U.S. attorney urged them to focus on L.S., but the instruction did not, and the court's instruction is what is pivotal here. The jury was affirmatively told for count 8 that they did not have to establish that there was any victim at all. Counsel, although you haven't argued this, if your statutory construction argument is correct, does count 8 even charge an offense? Are all the essential elements of the crime in count 8? Yes. That's my argument. No, I'm saying, well, I don't think you've made the argument that the indictment is deficient, if your statutory construction argument is correct. But is the indictment, is count 8 deficient? Yes. You argue that, Counselor, even though count 8 ends with, and attempted to do so, if you maintain that position, tell me what about the text of count 8 is deficient? What's missing from what should be there? It's missing an element. Well, which one? Are you speaking about the actual sexual act or the attempted sexual act? Let me take a look at count 8 here. I allege that count 8 is deficient because it didn't say, a person under 12 comma, specifically LS comma. But couldn't attempt be read to apply to the sex act attempted, an attempted sex act as opposed to an attempt to cross state lines? That obviously wasn't what the government was arguing, but couldn't the count be read that way? Attempted, but if you're attempting a sex act, it has to be with a specific person. Because if you just say, he was generically attempting, again, you're getting a thought crime. Well, I don't know that an indictment would have to name the victim. But anyway, go ahead with your argument. If the court has any further argument on that, I will move on to the other argument. Well, let me further point, you pointed out LS, but not mentioned MV3, another victim in this case. The U.S. attorney did not ever claim that he was under 12. He started to argue that he was under 12, and then he backed off from that. So I think the only candidate is LS. I'll listen with interest to your colleague's side about that point. Thank you. You may go back to your argument. The defendant believes that the state, the government, failed to prove that he was a resident of Cambodia. He was a resident of Cambodia, and the government did not prove that he was in a state of traveling. Their argument basically is that he traveled. Well, of course he traveled. He was born in the United States, and he was a missionary in Cambodia, and he got there by traveling. And we're not, of course, making the absurd argument that the misconduct had to occur on the airplane. But this statute is directed at what is casually called sex tourism. But you agree that the standard here is plain error, correct? No, I don't, because I think that the judge had an opportunity to correct it. The Pepe case came down after the verdict, but before sentencing. So the error was to fail to grant a new trial. So it was legal error. It's review de novo. But, I mean, isn't it the failure to instruct on this? Isn't that plain error? The instruction at the time, the state of the apparent state of the law at the time, counsel asked for an instruction, but they didn't have the motivation to really focus until Pepe came down. Because Pepe was a reversal, of course. So the persuasive district court authority was the opposite of what this court ruled it to be. So the error is the failure to grant a new trial. And, indeed, evidence of his residency or state of travel was not relevant during trial, given the state of the law at the time. But it was at issue. I mean, it was presented. For instance, your client himself, when asked about travel for his passport forms, indicated that it was temporary. He made trips abroad. He maintained ties in Oregon. I mean, definite indicia of traveling, not being in Cambodia permanently. And even when outside of the United States, moving about from place to place, how can you explain that or reconcile that with the decision by the trial court, implicitly, if not otherwise, that your client was traveling? He was a missionary in a very poor country and was required to travel. As a part of that mission, he needed to raise money. He needed to go to neighboring countries to buy supplies that Cambodia didn't have. You know, and given the level of corruption in Cambodia, of course he maintained a bank account in the United States. It would be malpractice to do otherwise. But the U.S. attorney himself argued in closing that he always intended to return to Cambodia. He referred to numerous Facebook posts that are in evidence. Cambodia was his home. He moved around the capital city three times with this mission, and he had no indicia of ever returning to the United States. But his driver's license continued to list his permanent addresses in the United States. In fact, it was a United States driver's license as well as a vehicle still titled to him in Oregon. How do you reconcile those? I don't believe he had a vehicle titled to him in Oregon. He did have an Oregon driver's license. You know, because Oregon is a stable place and Cambodia is not, and Cambodia allowed him to use the Oregon driver's license, he needed to drive when he was in Oregon, borrowed his brother's car to raise money. He raised money in California and Oregon and in Texas. But, I mean, his various applications form listed Coos Bay as his residence. He had credit cards showing a U.S. address. He had this U.S. driver's license. Why isn't that more than sufficient to demonstrate he was traveling? Because there was a great deal of evidence to show otherwise, and it was not an issue. So he needs a trial to be able to establish that. Accidentally, there's a great deal of evidence that he was living in Cambodia as well. He had relationships there. He rented property there. He had a mission there. He was there for almost a decade before he was brought back, I guess as well, to the United States. So he needs the opportunity to be able to establish that now that that's the state of the law, and the district court judge erred in failing to grant him a new trial at that point. So, counsel, your time has expired, but we'll give you some time for rebuttal. Thank you. Ms. Potter? Thank you. May it please the court, Amy Potter on behalf of the United States. I'll start first with a clarification for Judge Pearson. L.S. is MV3, so they are the same. MV3's initials are L.S., and unfortunately, per our policy, we don't use initials in briefings. So I apologize for that issue. I want to start with whether the district court properly instructed the jury on the 2241C count, and it did. The court certainly pointed us and is correct to point us to Lukashoff, but the issue in that case was venue. Was venue proper in Oregon? But, counsel, the issue may have been venue, but the holding was the essential conduct elements because the court had to decide that issue in order to resolve the case. Why aren't we bound by the holding that the essential conduct elements include engaging or attempting to engage in a sex act with a child? That specific conduct element was not essential to the decision in Lukashoff. And, in fact, the case that the Ninth Circuit relies on, the Crider case, the Tenth Circuit case, when you look at the instructions that were actually given in the Crider case, they are just that the defendant crossed the state line with the intent to commit a sexual act. Counsel, the District of Oregon was the prosecuting agency, the U.S. Attorney, in Lukashoff, too. Have you read your brief in that case? I did not review the brief in anticipation of this argument. So, I would commend page 32 of the brief to you where you lay out the statute. Are you aware of the instructions that the government sought in that case, the jury instructions? Yes, I am aware that in Lukashoff, we sought the jury instructions that then became the model instructions and that we did not seek in this case. We disagree that it was required now, but however, not at that time. So, counsel, while I believe Lukashoff is binding, even if it weren't, I find compelling that the statute before this amendment federalized two types of sex with children in the Special Maritime and Territorial Jurisdiction and in certain prisons. And then, because of a horrible event involving a girl, this new beginning of the statute was dropped in by legislators. And I just see nothing that would indicate that it was dropped in to punish crossing a state line, as opposed to you either cross a state line, you're within the Special Maritime and Territorial Jurisdiction, or in certain prisons and you have sex or attempt to have sex with a child. What is there in the way this was dropped into the statute that would indicate that this is alone with the other two parts not being standalone? I would point to the or, Your Honor, that you cross the state line with the intent to engage in a sexual act with a person who has not attained the age of 12 years, or, and then it talks about the other jurisdictional components. And those trace or track directly to engages in a sex act. But I think the court... No, go ahead, counsel. No, go ahead. I don't think the court needs to reach this issue because any error here was harmless. This wasn't just about one single passport belonging to MB3 or LS. And yes, LS made a mistake about the date of birth in terms of the month. He said May instead of June. So that's Exhibit 149 is his passport. But then he also goes on to describe Record Transcript 137 that he moved to the orphanage when he was around six years old. At 139 to 144, he talks about how the abuse starts from the very beginning and goes through the entire time he's there. So he's there from seven to the age of 11 before Mr. Johnson is arrested. Counsel, I've looked at the special verdict form. Every time the jury is asked a question about age, it's under 16, right? That is correct for the special verdict form. And, you know, the defendant got a life sentence on this count. And I think that counsel's point in the gray brief was they had no incentive to say to the jury that anybody was actually not under 12 because it wouldn't have made any difference. The only thing that mattered, the way the jury was instructed, was the defendant's intent. I mean, given that the government sought and obtained this instruction, you know, I just am very sympathetic to the defendant's argument that this can't be harmless error in the circumstances here the way the government chose to litigate the case. Well, Your Honor, I would say the defendant did have an incentive to argue that minor victim three was not 12 or under because the intent for the crime was to travel with the intent to have sex with someone who's under 12. Every other victim was over 12 at some point. And that's, again, why we use the special verdict form and use the age 16 because that's the other statute. So to the extent they wanted to say, argue, even if, jury, you find that he had sex with children, he never intended to have sex with children under the age of 12. He had intended to have sex with the older children at the orphanage. And there's plenty of testimony in the record of the difference between minor victim three who was considered one of the younger boys versus many of the other victims, including his brother, who were the older boys. So there was an incentive to argue that there was no intention to have sex with someone under the age of 12. Counsel, if you're wrong about the statute, does count eight to charge to state an offense? It does, because it includes the attempt language, Your Honor. And I would also state that they never moved to dismiss the indictment at the time. So we proceeded to trial and presented the evidence of the what this court has indicated it believes are all the elements of the offense. But but the only way that would be correct, if you're if your view of the statute is wrong, is if attempt referred to the sex act as opposed to the way you argued it to the district court. When you wrote when you wrote the indictment, you intended intent attempt to apply to attempt to cross state lines. Right. I assume so. Your Honor, I was not right president. But and I didn't review the grand jury transcript, but it makes sense based on what we later argued in terms of the jury instructions that yes, that our attempt did not go to the sex act. But even if that was your argument, Senator Hutchinson's statement when the statute was amended is different. He said, if you recall, or if you know, the legislation would establish new federal jurisdiction over sexual offenses against children when a person commits a crime after crossing state lines with intent of committing a sex offense. So I would say that the senator's statement and that in the government's brief are contradictory. And I ask you now, which one do you think is better representative of the intent of the amended statute? I think the proper reading of the statute is that it covers travel with intent without actual proof of a sex act. And I would go with the reasoning of the 6th and 11th circuits on the interpretation of the statute. And that is obviously the interpretation we advocated to the district court. You're talking about DiCarlo as well as Cryer? Yes, Your Honor. DiCarlo and Farley. DiCarlo from the 6th circuit and Farley from the 11th circuit. And as I indicated, Cryer, which is the 10th circuit case cited by the 9th circuit in Lukashoff, when you look at that underlying decision, the jury instructions given there did not require an actual sex act either. Even though the 9th circuit cites it for the principle that a sex act is required, it does not appear that the jury instructions require that there. So I would rest on those cases in terms of the proper reading of the statute, the presence of the or in the statute. And obviously that's what we advocated. And the court had some other questions about age. As I noted, minor victim 3's brother testified was also a victim of abuse. He compared their ages. Minor victim 3 was approximately 5 years younger. And then there are the exhibits, including government's exhibit 206, which is on a disc provided to the court, which is a flyer produced by the orphanage that includes a picture of minor victim 3, as well as states his date of birth as being June 10th, 2002. His age at that time of being 8 and describes his family history. And this is, again, produced by the orphanage run by Mr. Johnson. So the notion that there was some dispute about his age, and again, just a look at the picture makes clear that this was a very young child. Unless the court has further questions on that issue, I'll turn to the Pepe issue. And what I think is important here is, one, the jury instructions track the statutes. There's no plain error. But the other issue, and defense counsel properly points this out, there was a motion for new trial. More reviewing the motion for new trial, the district court's factual findings are reviewed for clear error. And the district court clearly found ER 513 that there was overwhelming evidence that Johnson was still traveling at the time of the illicit conduct. And that's because Mr. Johnson, yes, the government said he's always going back to Cambodia. He's also always going back to the United States. He's going back and forth and back and forth. And yes, is he returning to the United States in part to raise money? Yes, so that he can return to Cambodia and continue to live in the orphanage where he's repeatedly raping the boys in his care. So Pepe, while it did change how we interpreted the law after Clark, does not say that we have to prove that he was not a resident of Cambodia. What Pepe tells us is we have to prove he was still traveling, and we did. And that evidence is cited throughout our brief. And again, there's charts of the travel. But unless the court has further questions, there was a spillover argument. The evidence of intent for the purposes of travel was clearly relevant to Count 7 as well as to Count 8. So all that evidence, even if this court were to reverse on Pepe, would still have been relevant as to Count 7 and to Count 8. There are two other issues that I'm happy if the court has questions for me regarding the rule of specialty or the jury issue. I'm interested in the jury issue if you don't mind. And maybe differences you can further point out between your client and Match. I think the critical distinction between Match and this case is what we have here is a juror who, while claiming some expertise, the other members of the near panel have no idea what that expertise are. They don't even know what her job is because that was all contained in a questionnaire, so she's not asked about it. She makes an offhanded comment about a smile. The district court jumps in, quickly asks, can you be fair? She says no, and she's excused. The difference in Mach is that the district court there continues to clarify the expertise of the member of the veneer panel. And the veneer panel member says specifically that the key witness in that case, the child victim, has no reason to lie, and they don't lie about that. So she's basically vouching for the credibility of the key witness. I think Judge McShane was faced with an offhanded comment. He responded in the way that district courts have to do and decide, should I ask more questions about this specific issue, or should I simply remove this juror and proceed? He removed this juror and proceeded, and the parties proceeded and asked multiple questions, generally not about the specific smile comment, but generally about the juror's ability to be fair, and they all confirmed they could be fair. And on this record, I don't think there's a basis for reversing. So, counsel, your view is that if the court had sued us and asked more questions, that could have made it worse. Absolutely. I think it's hard to tell specifically from the record, but on a dry record, but there is some hint that this particular juror was not pleased to be there and was somewhat angry. This comment alone makes you wonder what else this juror might have said if asked more. And if the defense counsel had sought additional instructions or additional limiting instructions to the jury or about disregarding that, then the parties would have had the ability to debate whether that would make it worse or not. But the defense counsel didn't do that. That is correct. There was no request. As a matter of fact, the defense counsel didn't even ask for this juror to be struck for cause. Judge McShane simply stepped in, asked one question, can you be fair? When the juror said no, excused the juror on his own motion for cause. And again, there was no request at this point to speak to that veneer panel, that group of 16. There's no request for any other limiting instructions from either side. And so the parties moved on. And again, the jurors confirmed and were instructed repeatedly that they needed to decide the case on the evidence and that they confirmed they could be fair. And with one minute remaining, I'll send... An easier record, far more certain that there would be fairness and impartiality had the other five veneer persons been removed and just started new after those comments had been overheard? Well, certainly, Your Honor, I'll acknowledge it would be easier for me to be standing here today if that group had been removed, because we wouldn't have this issue. But no one asked for that. The judge... A district judge is given a substantial amount of discretion to manage a veneer. And we've never... And there's no case that says every time a juror makes an offhanded comment, we need to start all over. This is a rare case where it was a smaller group. But typically, we're talking about all or a much larger group of the veneer panel being there. If that was the rule, we'd constantly be starting over with jury selection. That's why we allow the district judge who hears the comment, who sees the jurors, to make the decision as to whether that remedy is required. And in this case, of course, Judge McShane was doing that on his own accord because there was no request that that be done. Certainly, if the defense had done that, we'd be in a different scenario. But the defense did not ask for that. And I see that my time is up, so I appreciate it. Thank you, Your Honor. All right. Thank you, counsel. Ms. Grazer, we'll give you two minutes for a rebuttal. Thank you. The jurors, the five jurors that heard it and whatever they might have said in the jury room, we don't know that they didn't spend the entire trial watching the defendant and seeing if he smiled. Fact matching with the other case, the match case, is not always fruitful. But in this case, she did indeed very, very specifically qualify herself. She spent 11 years working with 1,000 sex offenders, and 0.01% of them were not guilty. That is to say, 999 of them smiled just like my client. And that could hardly, I can't conceive of something that would be more powerful. A limiting instruction might very well have solved the source confusion problem. But without it uncorrected, that expert opinion simply was out there for the jurors to consider. But trial counsel certainly knew that and could have objected if trial counsel had wanted to. She could have, yes. The judge essentially took over, and she elected not to jump in. Thus, it is a plain error, but I submit that failure to have a fair jury is a profound or perhaps even structural error. Well, I mean, unless counsel thought that the people in that small group were people that counsel wanted on the jury. I submit, Your Honor, that that's a question that needs to be asked in the 2255 case. That may well be. Yeah. You know, the distinction for traveling was he still traveling, not that he was traveling. He's a missionary that was required to raise money. He came to the United States about 20% of the time, 20% of his yearly time that he was here in the United States. Virtually all of it. He stopped in to say hi to his brother, but virtually all of it was raising money. And I see that my time has expired. All right. We thank counsel for their helpful arguments, and this case will be submitted.
judges: Pearson, Bennett, Miller